STATE OF CONNECTICUT *v.* JONATHAN DEBARROS
(AC 19244)

O'Connell, C. J., and Spear and Mihalakos, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued October 26, 1999—officially released July 11, 2000

*John R. Gulash, Jr.*, for the appellant (defendant).

*Judith Rossi*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Robin Lipsky*, assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Jonathan DeBarros, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a),[2] attempt to commit murder in violation of General Statutes §§ 53a-49 (a)[3] and 53a-54a and assault in the first degree with a firearm in violation of General Statutes § 53a-59 (a) (5).[4] The defendant claims that the trial court improperly (1) instructed the jury on the element of intent, (2) excluded evidence that was relevant to his theory of self-defense and (3) refused to instruct the jury as he requested on self-defense and a lesser included offense. We reverse the judgment of the trial court and order a new trial.

The following facts and procedural history are relevant to this appeal. On the afternoon of Sunday, October 13, 1996, the victim, Jermaine Lewis, and a group of fifteen to twenty teenagers were playing basketball outside the North End Recreation Center in Waterbury.

[2] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[3] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[4] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

The defendant, a regular participant in such Sunday afternoon games, arrived at the recreation center soon after the victim. The victim approached the defendant and the two walked to a wall at the far end of the basketball court where they stood and talked.

The conversation between the victim and the defendant erupted into an argument. As a crowd began to gather, the defendant pulled a gun from the inside of his coat pocket, aimed it at the victim's upper body and fired several shots. The victim was hit by a bullet and fell to the ground. As the victim was lying in a fetal position, the defendant stood over him and resumed firing until the gun was empty.[5]

Sensing that the defendant's gun had no more bullets, the victim's friend, Scott Nash, ran toward the defendant. The defendant took a step back, pulled another gun from the inside of his coat and fired three shots at Nash that missed. Nash turned around and started running away as the defendant fired more shots, three of which struck Nash. The defendant then got on a bicycle and rode away. One of the youths in the crowd ran to a telephone and called 911.

Emergency medical personnel took Lewis to a hospital, where he was pronounced dead. As Nash was being escorted to the hospital by his friend, Edward Griffin, a police officer patted down both teens and found no weapons on either of them. At the hospital, Nash was treated for a collapsed lung and gunshot wounds.[6]

The defendant was arrested on the day of the shooting and taken to the police station for questioning. The defendant was informed of his *Miranda*[7] rights, signed a waiver of those rights and gave the police a signed

---

[5] An autopsy report revealed that the victim had been shot five times.

[6] Nash was released from the hospital three days later.

[7] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

statement recounting the shooting. The defendant gave, in relevant part, the following account of the events: "[Nash] call[ed] me over to where they were standing, when I walked over, [Nash] started talking to me. While [Nash] was talking to me [the victim] started yelling at me. . . . [A]ll the time he kept his hands in [the] pocket of his hoodie. I started getting real nervous because I thought [the victim] had a gun in his pocket. When [the victim] started to take his hands out of his pocket I pulled out the smaller gun, of the two guns I was carrying. . . . When I took my .25 cal gun out, I shot [the victim] once, but then kept on shooting until the gun was empty. After [the victim] fell, [Nash] knew my .25 cal was out of bullets so he started coming at me. That's when I pulled out the nine millimeter and fired twice at [Nash]."

The defendant was charged with murder, attempt to commit murder and assault in the first degree with a firearm. At trial, he claimed self-defense.[8] To support his claim that he reasonably believed it was necessary to defend himself, he testified that one week before the shooting, as he was visiting Lewis at his home, he called Lewis over to his car, and Lewis "pulled out a gun and told [him] to get the fuck out of here or he was going to shoot the car." The defendant also testified that just before he shot Lewis, he saw him with a gun.

The defendant then offered testimony from Ray Dixon, who was present during the shooting. While Dixon did not testify that he had seen Lewis with a gun,

---

[8] Self-defense is defined by General Statutes § 53a-19, which provides in relevant part: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm . . . ."

he did state that he had seen the state's witness, Edward Griffin,[9] grab "something" from the body of Lewis immediately after the shooting. The defendant thereafter sought to introduce testimony from a police officer that Griffin and Lewis' brother, Jason Lewis, were both arrested while in possession of a handgun three hours after the shooting.[10] The state objected to the proffered testimony. In response to the state's objection, the defendant argued that the evidence was relevant to his claim of self-defense.[11] The trial court excluded the officer's testimony, concluding that "it's too remote in time, it's unconnected to this case. It would be confusing for the jury, it's immaterial, it's irrelevant. It's entirely too tenuous."

During its instructions, the court charged the jury on the elements of murder. It read the entire statutory definition of intent contained in General Statutes § 53a-3 (11),[12] including a portion that does not apply to this case. The inapplicable portion of the statute provides in relevant part that "[a] person acts intentionally . . . when his conscious objective is . . . to engage in such conduct . . . ." General Statutes § 53a-3 (11). In instructing on attempt to commit murder, assault in the first degree with a firearm and several lesser included offenses, the court referred back to the inapplicable portion of the definition of intent seven times. Thereafter, upon request for clarification by the jury on intent

---

[9] Griffin was the victim's friend.

[10] The police arrested both Griffin and Lewis after stopping them in an automobile. A gun was found in the vehicle.

[11] At trial, the defendant argued: "The relevance is that Ray Dixon said that he saw Ed Griffin take something off the victim, the defendant's claim is that was, in fact, the gun that the victim was about to pull out and that may have, in fact, been the gun that was in the car three hours later with Ed Griffin and Jason Lewis."

[12] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

and attempt to commit murder, the court twice repeated the definition of intent and included the portion that is inapplicable to this case.

During its instructions on self-defense, the court refused to instruct the jury in the manner that the defendant specifically requested. The court also refused to instruct the jury on the lesser included offense of manslaughter in the second degree as requested by the defendant. The defendant was subsequently convicted of all charges, and this appeal followed.

I

We first address the defendant's claim that the trial court improperly instructed the jury on the element of intent with respect to all of the charges. Specifically, the defendant claims that the trial court's reading to the jury of the entire definition of intent set out in § 53a-3 (11) permitted the jury to find him guilty of specific intent crimes without necessarily finding that he intended to cause a specific result, but on finding instead only that he intended to engage in conduct that caused a result. We agree.

The defendant did not object to the court's instruction at trial and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and the plain error doctrine. Practice Book § 60-5. In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of

any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* supra, 239–40.[13]

The defendant's claim satisfies the first two prongs of *Golding* because the record is adequate for review and "[a]n improper instruction on an element of an offense . . . is of constitutional dimension. . . . *State* v. *Austin,* [244 Conn. 226, 235, 710 A.2d 732 (1998)]." (Internal quotation marks omitted.) *State* v. *Maia,* 48 Conn. App. 677, 686, 712 A.2d 956, cert. denied, 245 Conn. 918, 717 A.2d 236 (1998). "Due process requires that the state establish beyond a reasonable doubt every essential fact necessary to establish the crime charged . . . including intent where intent is one of those elements." (Internal quotation marks omitted.) *State* v. *Austin,* supra, 235.

The defendant's claim also satisfies the third prong of *Golding* because it is clear from the record that a constitutional violation exists. In addition to murder, which requires a specific intent, the defendant was charged with attempt to commit murder and assault in the first degree with a firearm. "[T]he specific intent to kill is an essential element of the crime of murder [and attempt to commit murder]." (Internal quotation marks omitted.) Id. Additionally, the specific intent to

---

[13] Although our Supreme Court held that *all* of the conditions of *Golding* must be met for a defendant to prevail on a claim of constitutional error not preserved at trial, it is clear from the language of *Golding* that if the fourth prong is met, the second part of the third prong does not have to be met and vice versa. If the fourth prong of *Golding* is satisfied by the state's failing to demonstrate harmlessness beyond a reasonable doubt, naturally it is unnecessary for the defendant to demonstrate that he was clearly deprived of a fair trial. Similarly, if the defendant demonstrates that he was clearly deprived of a fair trial, the state could not demonstrate that harmlessness exists beyond a reasonable doubt. This position is supported by the court's mode of *Golding* analysis in *State* v. *Wolff,* 237 Conn. 633, 662, 678 A.2d 1369 (1996). In *Wolff,* the court analyzed a *Golding* claim by addressing prongs one, two, four and the first part of prong three. We therefore proceed with our analysis in the same manner.

cause physical injury is an essential element of the crime of assault in the first degree. "To act intentionally, the defendant must have had the conscious objective to cause the death"; id.; and, with respect to assault, physical injury to the victim.

Intent to engage in proscribed conduct that results in death and physical injury is not sufficient. In instructing the jury on intent, however, the court read the entire statutory definition contained in § 53a-3 (11), including a reference to intent to engage in proscribed conduct.[14] As our Supreme Court has previously stated,

[14] The court's instruction to the jury provides in relevant part: "There are three counts here. The first count is murder. Our statutes read as follows: A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person. There are two elements that the state has to prove to you beyond a reasonable doubt. The first is that the defendant had the intent to cause the death of another person, [the victim]. . . .

"I'll now go through these two elements with you one by one and explain them to you in a little more detail. The first element is that the defendant had the intent to cause the death of another person. Our statutes and law [are] that a person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct. Intentional conduct is purposeful conduct, rather than conduct that is accidental or inadvertent.

\* \* \*

"In count two of the information the defendant is charged with the crime of assault in the first degree as follows: A person is guilty of assault in the first degree when with intent to cause physical injury to another person, he causes such injury to such person to a third person by means of discharge of a firearm. . . . For you to find the defendant guilty of this charge the state must prove the following elements beyond a reasonable doubt: One; that the defendant intended to cause physical injury to another person. . . .

"The state must first prove beyond a reasonable doubt that the defendant intended to cause physical injury to another person. What the defendant intended is a question of fact for you to determine, and my previous instructions on intent . . . apply here as well.

\* \* \*

"Count three is attempted murder. . . . The state has charged the defendant with the crime of attempt to commit murder as I define that for you, with intent to commit that crime he intentionally . . . took actions that were a substantial step in a course of conduct that the defendant had planned to have culminate in the commission in the crime of murder. . . .

"So, the first element that the state must prove beyond a reasonable doubt

"[i]t is improper for the trial court to read an entire statute to a jury when the pleadings or the evidence support a violation of only a portion of the statute . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Austin*, supra, 244 Conn. 235; *State* v. *Dinoto*, 229 Conn. 580, 584, 642 A.2d 717 (1994); *State* v. *Chapman*, 229 Conn. 529, 537, 643 A.2d 1213 (1994).

Finally, the defendant's claim satisfies the fourth prong of *Golding* because the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. When reviewing a challenged jury instruction, "[i]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled. . . . *State* v. *Figueroa*, 235 Conn. 145, 170–71, 665 A.2d 63 (1995)." (Internal quotation marks omitted.) *State* v. *Delgado*, 247 Conn. 616, 625, 725 A.2d 306 (1999). "In determining whether it was . . . reasonably possible that the jury was misled . . . the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Griffin*, 251 Conn. 671, 714, 741 A.2d 913 (1999).

Having reviewed the charge as a whole, we cannot say that it was presented to the jury so that no injustice resulted. It is reasonably possible that the jury was

in count three is that the defendant had the kind of mental state required for the commission of murder. The intent for that crime is to kill, to cause the death. The court then instructs the jury on the mental state required, again, intent, and we've done that."

misled because the probable effect of the improper charge was that it guided the jury to an incorrect verdict. The trial court not only improperly read the intent to "engage in conduct" language in its initial and two supplemental charges, it also improperly referred back to that language seven times throughout its instructions to the jury. Under these circumstances, it does not strain reason to believe that the jury could have understood that the state needed to prove beyond a reasonable doubt only that the defendant intended to engage in the conduct of firing a gun, rather than prove on the charges of murder and attempt to commit murder that he intended to cause the death of the victim and Nash, and on the charge of assault in the first degree with a firearm that he intended to injure Nash seriously.

The state cites *State* v. *Prioleau*, 235 Conn. 274, 322, 664 A.2d 743 (1995), and *State* v. *Austin*, supra, 244 Conn. 235, to support its contention that the instructions as a whole guided the jury to a correct verdict. Both *Prioleau* and *Austin* are distinguishable from this case. The trial court instructed on intent to "engage in conduct" language once in *Prioleau* and twice in *Austin*. In each case, the trial court's proper instructions eliminated the risk of jury confusion over the element of intent. Here, the trial court's improper instructions were too numerous to be rectified by the court's proper instructions. In total, the court either read or referred back to the improper instruction ten times.

Additionally, in both *Prioleau* and *Austin*, the trial court read the improper instruction only as part of a general definition of intent. Here, the court read the instruction as a specific definition of the intent required for the crimes charged. After reading to the jury the definition of murder, the court stated in relevant part: "There are two elements that the state has to prove to you beyond a reasonable doubt. The first is that the defendant had the intent to cause the death of another

person, [the victim]. Second . . . I'll now go through these two elements with you one by one and *explain them to you in a little more detail.* The first element is that the defendant had the intent to cause the death of another person. Our statutes and law [are] that a person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct. Intentional conduct is purposeful conduct, rather than conduct that is accidental or inadvertent." (Emphasis added.)

The order in which the instruction was read likely misled the jury to believe that to intend to cause the death of another person means either to intend to cause the death of that person or to intend to engage in conduct that causes the death of that person. Similarly, when the court referred back to the improper instruction as it charged the jury on attempt to commit murder and assault in the first degree with a firearm, the jury was also likely misled in the same manner.[15] The fourth prong of *Golding* is; therefore, satisfied. Accordingly, the judgment of conviction must be reversed.

Although our holding on the first issue requires reversal, we will consider the other issues raised by the defendant as they are likely to arise in the new trial. See *Poulos* v. *Pfizer, Inc.*, 244 Conn. 598, 615, 711 A.2d 688 (1998).

II

The defendant next claims that the trial court improperly excluded evidence that was relevant to his theory of self-defense. Specifically, he claims that the trial court abused its discretion when it excluded evidence that Griffin and Jason Lewis were arrested with a gun in a

---

[15] It is also important to note that unlike in *Austin*, the court here did not provide instructional handouts to the jury that would have properly explained the element of intent.

car approximately three hours after Griffin was seen taking something from the victim's body. We agree that the evidence should have been admitted.[16]

We first set forth the standard by which we review the trial court's determinations concerning the exclusion of evidence. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997). Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . *State* v. *Berger*, 249 Conn. 218, 230, 733 A.2d 156 (1999)." (Internal quotation marks omitted.) *State* v. *Billie*, 250 Conn. 172, 180, 738 A.2d 586 (1999).

A

When determining whether the trial court abused its discretion, our review "is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. *Timm* v. *Timm*, 195 Conn. 202, 210, 487 A.2d 191 (1985)." *State* v. *Billie*, supra, 250 Conn. 180. We conclude that the court incorrectly applied the law when it excluded evidence relevant to the defendant's case.

---

[16] The defendant also claims that the trial court improperly excluded evidence that the police found bullets belonging to the victim embedded in dirt under a porch. This claim is completely without merit. The defendant attempted to use this evidence to support his claim that the victim was in possession of a gun on another occasion. The bullets, however, were in no way connected to the victim. The house was not the residence of the victim, numerous people frequented the area and there was no way of telling how long the bullets had been where they were found. In fact, defense counsel acknowledged that the bullets were not connected to any specific issue in the case.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other . . . more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative.' . . . *State* v. *Coleman,* supra, 241 Conn. 788–89." (Internal quotation marks omitted.) *State* v. *Billie,* supra, 250 Conn. 181.

The crux of the defendant's claim is that he acted in justifiable self-defense when he shot Lewis. He testified that he reasonably believed that it was necessary to defend himself because he saw the victim with a gun. Under these circumstances, any evidence that has a logical tendency to show that the victim had a gun during the shooting aids the trier in the determination of whether the defendant acted in justifiable self-defense. Griffin's possession of a gun three hours after the shooting coupled with testimony that he took something from Lewis' body immediately after Lewis was shot has a tendency, however slight, to make more probable the existence of the fact that Lewis was armed.[17] Further-

---

[17] The state claims that the evidence was properly excluded since "any connection between the gun in the car at the time of arrest and the shooting incident . . . was at best speculative" because "no one other than Dixon testified that Griffin was anywhere near [the victim's] body . . . [and when the officer] patted down both Griffin and Nash within minutes of the shooting, no weapons were found." First, the fact that Dixon was the only witness to testify that Griffin took something from the victim's body does not render the defendant's proffered evidence irrelevant. Dixon's testimony was based on his personal knowledge and supports the defendant's suggested inference that the victim possessed a gun during the shooting. Second, the claim that

more, the three hour period between the shooting and the discovery of the gun was not too remote in time since it is connected with and tends to explain a critical issue in this case. The evidence tends to explain why the police did not find a gun on Lewis' person when they searched him upon arriving at the scene.[18]

While the court may not have been impressed by the strength of the defendant's case, "weighing the evidence and judging the credibility of the witnesses is the function of the trier of fact and this court will not usurp that role. . . . *State* v. *Figueroa*, [supra, 235 Conn. 179]." (Internal quotation marks omitted.) *Hunter* v. *Healey Car & Truck Leasing, Inc.*, 41 Conn. App. 347, 350, 675 A.2d 919, cert. granted on other grounds, 238 Conn. 901, 677 A.2d 1375 (1996) (appeal dismissed December 18, 1996). As our Supreme Court has previously stated, " '[a] party has the same right to submit a weak case as he has to submit a strong one. *Fritz* v. *Gaudet*, 101 Conn. 52, 53, 124 A. 841 (1924),' *Falker* v. *Samperi*, [190 Conn. 412, 419, 461 A.2d 681 (1983)]." *Thomas* v. *West Haven*, 249 Conn. 385, 392, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d

Griffin was patted down within minutes after the shooting and no gun was found on him is a factor for the jury to consider, with all of the other evidence.

[18] The evidence also was neither prejudicial nor merely cumulative. " 'There are situations where the potential prejudicial effect of relevant evidence would suggest its exclusion. These are: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it.' *State* v. *DeMatteo*, 186 Conn. 696, 702–703, 443 A.2d 915 (1982); accord *State* v. *Greene*, 209 Conn. 458, 478–79, 551 A.2d 1231 (1988)." *State* v. *Booth*, 250 Conn. 611, 645–46, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000). None of these factors exist in this case. Additionally, the evidence was not merely cumulative because there was no other means by which this evidence was, or could have been, placed before the jury.

99 (2000). We, therefore, conclude that the trial court abused its discretion when it excluded the defendant's proffered evidence. Because evidence of the victim's possession of a handgun at the time of the shooting would have been relevant to show that the defendant reasonably feared for his safety, circumstantial evidence of such possession was also relevant. See *State v. Villafane*, 171 Conn. 644, 676, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled in part on other grounds, *State v. Stepney*, 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

## B

The state contends that even if the trial judge abused its discretion by improperly excluding the defendant's evidence, such error did not prejudice the defendant. The state claims that the "evidence supporting the defendant's self-defense claim was 'thin,' and the state's case was very strong." We are not persuaded.[19]

---

[19] The state argues that the defendant's self-defense claim was "thin" because (1) the defendant's own testimony regarding self-defense was "largely uncorroborated," (2) the defendant's credibility was undermined in significant respects because his testimony was inconsistent with that of other witnesses and (3) it was unreasonable for the defendant to resume firing at the victim after he had fallen to the ground.

First, none of the purported inconsistencies pertains to the issue of whether the defendant was justified in using self-defense. Second, assessing the defendant's credibility was a matter for the jury. Third, "[t]he state did not present evidence . . . nor did it argue to the jury, that the defendant was guilty of murder because he had used an *excessive degree of force* in protecting himself. . . . The theory of the state's case, rather, was that the defendant did not believe, at the time that he shot the victim, that the victim was about to attempt to kill him or cause him serious bodily harm. The critical issue for the jury to decide . . . was not whether the defendant had used a reasonable degree of force, but whether he had reasonably believed, when he shot the victim, that the victim was about to use deadly force or inflict great bodily harm upon him." (Emphasis in original.) *State v. Prioleau*, supra, 235 Conn. 289–90.

"[T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant. The defendant must show that it is more probable than not that the erroneous action of the court affected the result. . . . The question is whether the trial court's error was so prejudicial as to deprive the defendant of a fair trial, or, stated another way, was the court's ruling, though erroneous, likely to affect the result?" (Citations omitted; internal quotation marks omitted.) *State* v. *Booth*, 250 Conn. 611, 638, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000).

Having reviewed the record, we conclude that the defendant has sustained his burden that it is more probable than not that the court's improper ruling likely affected the result of the trial. An essential issue in this case was whether the defendant reasonably believed that he was in imminent danger of death or serious bodily injury. The state's witnesses uniformly testified that the victim did not have a gun. Additionally, a police officer testified that he found no weapons on or near the victim's body. The state used the absence of a gun connected to the victim to its advantage.[20] The defendant on the other hand attempted to offer the excluded evidence to cast doubt on the state's case and to support his claim that the victim had a gun. His entire argument on this issue turned on his purported belief that the victim was armed and that the gun was somehow

[20] During closing argument, the state's attorney argued to the jury: "You heard that they checked for weapons and they can't find any, it's an extensive search for weapons, none in the area. . . . There's no evidence of the things that [defense] counsel's talking about . . . about [the victim] having a gun . . . where is this gun that the defendant mentions? First of all, the defendant is the only person who deals with the self-defense issue. He's the only person that tells you, oh, I saw the barrel of a gun, [the victim's] playing with the gun. Well, then where is this gun? . . . [W]here is this gun that the defendant mentions? . . . Well, then where is this gun? . . . [D]on't you think somebody would have been able to get that gun?"

removed from the victim before police showed up at the scene and searched the area. The excluded evidence could have supported the defendant's claim that the victim had a gun during the shooting and that the defendant, in fact, reasonably believed he was in danger of death or serious bodily injury. For that reason, we cannot say that the court's refusal to admit the defendant's proffered evidence did not likely affect the jury's decision.

### III

The defendant next claims that the trial court improperly refused two of his requests for jury instructions on the charge of murder. We disagree.

### A

The defendant first claims that the trial court improperly refused to instruct the jury as he requested with regard to self-defense. He contends that the trial court's failure to charge the jury as requested misled the jury.

It is true that "[a] request to charge which is relevant to the issues of [the] case and which is an accurate statement of the law must be given. A refusal to charge in the exact words of a request [however] will not constitute error if the requested charge is given in substance." (Internal quotation marks omitted.) *State* v. *Jennings*, 216 Conn. 647, 663, 583 A.2d 915 (1990). While the court in this case did not instruct the jury in the specific language of the defendant's request, it did give the requested charge in substance.[21] The defendant does

---

[21] A proper self-defense instruction sets forth that the jury must apply a subjective-objective test when considering the evidence. *State* v. *Edwards*, 234 Conn. 381, 389, 661 A.2d 1037 (1995). The defendant's request would have required the court to place undue emphasis on the subjective element of the test. The court, however, appropriately gave a balanced instruction on both the subjective and objective elements.

Defense counsel's request to charge the jury on self-defense was as follows: "The danger, or apparent danger, claimed by the defendant is to be determined from his standpoint, at the time of the attack, and under all the existing circumstances. The act leading to the defendant's claim of self-

not claim that the court gave an inaccurate or incomplete statement of the law when it instructed the jury. Without such a showing, we cannot say that the jury was in any way misled by the court's instruction. "Absent evidence to the contrary, we presume that the jury acted in accordance with the instructions given by the court. *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 46, 717 A.2d 77 (1998)." (Internal quotation marks omitted.) *Mack* v. *LaValley*, 55 Conn. App. 150, 160, 738 A.2d 718, cert. denied, 251 Conn. 928, 742 A.2d 363 (1999). The defendant's claim is without merit.

B

The defendant also claims that the trial court improperly refused to instruct the jury on the lesser included

defense need not be an actual threat or an assault. The test is not what the other person actually intended, but what the aggressor's act caused the defendant to reasonably believe was his intention. In other words, the danger need not have been actual, if the defendant reasonably believed that the danger was actual, real, imminent, or unavoidable."

The trial court did not give the defendant's requested instruction. Instead, the court charged the jury in relevant part as follows: "The test for the degree of force in self-defense is a subjective-objective one. You must first view the situation from the perspective of the defendant, that is, whether the defendant believed that reasonable force was necessary to repel an attack. The jury must then determine whether that belief was reasonable under the circumstances.

"The jury must find the defendant not guilty on grounds of justification unless the state has proven beyond a reasonable doubt any one of the following five elements: One, the defendant did not believe that he was in imminent danger of death or injury and that the use of force was not necessary to protect himself. Two, that he did not have reasonable grounds to believe that he was in imminent danger of death or injury. Three, that the force used was unreasonable. Four, if he was the initial provocateur or aggressor and did not attempt to withdraw. Or five, he was engaged in mutual combat not specifically authorized by law.

"If the state has proven any one or more of these elements by evidence beyond a reasonable doubt to you, then the defendant was not justified and does not have a valid self-defense claim.

"A defendant claiming a justification of self-defense is permitted to use deadly force in two broad circumstances. He may justifiably use deadly force only if he reasonably believes that the other person was one, using

offense of manslaughter in the second degree, thereby violating his federal and state constitutional rights.[22]

"There is no fundamental constitutional right to a jury instruction on every lesser included offense; *State v. Whistnant*, 179 Conn. 576, 583, 427 A.2d 414 (1980); rather, the right to such an instruction is purely a matter of our common law. A defendant is entitled to an instruction on a lesser [included] offense if, and only if, the following [*Whistnant*] conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser. Id., 588. . . . *State v. Tomasko*, 238 Conn. 253, 260, 681 A.2d 922 (1996)." (Internal quotation marks omitted.) *State v. Morris*, 49 Conn. App. 409, 413–14, 716 A.2d 897, cert. denied, 247 Conn. 904, 720 A.2d 516 (1998).

We must determine under the first prong of *Whistnant* whether the request to charge constituted an appropriate instruction. "A proposed instruction on a

or about to use deadly physical force, or, two inflicting or about to inflict great bodily harm on him."

[22] The defendant also contends in the same instance that the court violated his state statutory right under General Statutes § 53a-45 (c). This claim is meritless. General Statutes § 53a-45 (c) provides in relevant part: "The court or jury before which any person indicted for murder or held to answer for murder . . . may find such person guilty of homicide in a lesser degree than that charged." This statute does not confer any rights upon a defendant. Rather, the statute simply allows a court or jury to find a defendant guilty of a lesser included offense where such a finding is warranted.

lesser included offense constitutes an appropriate instruction . . . if it complies with Practice Book § 854 [now § 42-18]." (Internal quotation marks omitted.) *State* v. *Tomasko,* supra, 238 Conn. 261. "Section 854 [now § 42-18] provides in relevant part: When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, *and the evidence to which the proposition would apply* . . . ." (Emphasis in original; internal quotation marks omitted.) Id. "[I]n the context of a written request to charge on a lesser included offense, this requirement of § 854 [now § 42-18] is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested." (Internal quotation marks omitted.) Id., 261–62.

The defendant's written request in this case to charge on the lesser included offense of manslaughter in the second degree was a mere recitation of the relevant statutory section along with a comparison of manslaughter in the second degree with manslaughter in the first degree.[23] The defendant did not include in his

---

[23] The defendant's request to charge was as follows: "In accordance with Practice Book § 852 [now § 42-16], the defendant requests that the following instructions be included in the court's charge to the jury . . . .

\* \* \*

"SECOND DEGREE MANSLAUGHTER WITH A FIREARM (§ 53a-56)

"A person is guilty of manslaughter in the second degree with a firearm when he recklessly causes the death of another person and in the commission of such offense he uses a pistol, revolver or other firearm. There are, then, three basic elements of manslaughter in the second degree: (1) the defendant acted recklessly; (2) he thereby proximately caused the death of another person; and (3) he used a pistol, revolver or other firearm.

"As you can see, the basic difference between manslaughter in the first degree and manslaughter in the second degree with a firearm is this:

"Under manslaughter in the first degree there must be circumstances demonstrating an extreme indifference to human life, and the defendant's reckless conduct must have created a grave risk of death to another person; while under manslaughter in the second degree it is not necessary to show that extreme indifference to human life nor to show a grave risk of death.

request a complete statement of the essential facts to justify the court charging as he requested. His request "contains nothing more than a skeletal list of statutory subsections." *State* v. *McIntosh*, 199 Conn. 155, 161, 506 A.2d 104 (1986). "While this court does not favor unyielding adherence to rules of procedure where the interests of justice are thereby disserved . . . the ever increasing refinement of our law justifies cooperation of counsel in stating requests for jury instruction. The minor burden of cooperation imposed by [§ 42-18] is neither unreasonable nor novel." (Internal quotation marks omitted.) *State* v. *Tomasko*, supra, 238 Conn. 262. Accordingly, the trial court did not improperly refuse the defendant's request to instruct the jury on the lesser included offense of manslaughter in the second degree.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

Under manslaughter in the second degree it is sufficient if the defendant was reckless, as I have defined that term for you, and that his reckless conduct proximately caused the death of [the victim] by the use of a pistol, revolver or firearm. If you find these elements proven beyond a reasonable doubt, then you must find the defendant guilty."