STATE OF CONNECTICUT *v.* PHILLIP C. WHITE III
(AC 25840)

Flynn, C. J., and Schaller and Dupont, Js.

Argued May 31—officially released October 3, 2006[1]

*Alice Osedach,* assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Margaret E. Kelley,* senior assistant state's attorney, for the appellee (state).

Opinion

DUPONT, J. The defendant, Phillip C. White III, appeals from the judgment of conviction, rendered after

[1] Upon motion by the state, which was granted by this court, we reprinted this opinion in its entirety and deleted all references to the complainant's name and address.

a jury trial, of kidnapping in the second degree with a firearm in violation of General Statutes § 53a-94a (a)[2] and burglary in the second degree with a firearm in violation of General Statutes § 53a-102a (a).[3] On appeal, the defendant claims that (1) there was insufficient evidence to support a conviction for kidnapping in the second degree with a firearm, (2) the trial court improperly instructed the jury on the element of intent for both the kidnapping and burglary charges, (3) the court improperly failed to instruct the jury on criminal trespass in the second degree, as a lesser included offense of burglary in the second degree with a firearm, and (4) the court improperly instructed the jury on the elements of burglary in the second degree, permitting the jury to return a nonunanimous verdict.[4] We reverse the judgment of conviction on count two, burglary in the second degree with a firearm, and remand the case for a new trial on that charge, and we affirm the judgment of conviction on count one, kidnapping in the second degree with a firearm.

---

[2] General Statutes § 53a-94a (a) provides in relevant part: "A person is guilty of kidnapping in the second degree with a firearm when he commits kidnapping in the second degree, as provided in section 53a-94, and in the commission of such offense he . . . represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm. . . ."

[3] General Statutes § 53a-102a (a) provides in relevant part: "A person is guilty of burglary in the second degree with a firearm when he commits burglary in the second degree as provided in section 53a-102, and in the commission of such offense he . . . represents by his words or conduct that he possesses a pistol, revolver, rifle, shotgun, machine gun or other firearm. . . ."

[4] In view of our conclusion that a new trial is necessary on the charge of burglary in the second degree with a firearm because of the court's refusal to instruct the jury on criminal trespass in the second degree as a lesser included offense, we need not address the defendant's claim that the court's instructions permitted the jury to return a nonunanimous verdict on that charge. Further, our conclusion that a new trial is necessary on the burglary charge and our discussion of the element of intent for the kidnapping charge renders a discussion of the claim that the court gave an improper charge on the element of intent on the burglary charge unnecessary.

The jury reasonably could have found the following facts. On June 24, 2003, the complainant was alone inside her parents' home in the town of Fairfield. At approximately 4 p.m., the defendant approached the front door and rang the doorbell. The complainant answered the door, and the defendant informed her that he was selling magazine subscriptions to earn money for college. The defendant asked the complainant to look at a brochure to determine if she was interested in purchasing any of the magazines. The complainant informed the defendant that she could not purchase anything because her parents were not home. She recommended that he return sometime around 6 p.m. when her parents would be home from work.

The defendant asked the complainant if he could use the bathroom. The complainant hesitated. The defendant explained that he really had to use the bathroom. Without invitation, the defendant brushed by the complainant, who was standing in the doorway, and walked straight down the hallway of the foyer toward the bathroom located off the kitchen. The defendant remained in the bathroom for approximately thirty seconds. When he emerged from the bathroom, the defendant walked slowly toward the complainant. While the defendant was in the bathroom, the complainant did not hear the bathroom door shut or the water running from the bathroom plumbing. The complainant remained near the front doorway while the defendant was in the bathroom.

The defendant, again, asked the complainant to look at the magazine brochure. The complainant briefly looked at the brochure, handed it back to the defendant and told him that she had not heard of any of the magazines on the list. The defendant took the brochure, walked toward the door and closed the door. Placing his hand in the rear pocket of his trousers, the defendant told the complainant that he had a gun and ordered her to sit on a couch in the den adjacent to the foyer. The complainant entered the den and sat on the couch

closest to the foyer. The defendant asked her what time her parents would arrive home. Though the complainant had told him earlier that her parents would be home at approximately 6 p.m., this time she told the defendant that they would arrive at approximately 5:30 p.m., hoping that he would believe that her parents would arrive sooner. The defendant then asked if anyone else was home, and she told him that no one else was home at the time.

After approximately three minutes, the defendant told the complainant to stand up because he wanted to go upstairs. Walking sideways facing the complainant, the defendant slowly approached the stairwell just off the den. After taking several slow steps, the defendant placed his hand on the complainant's elbow to hurry her along. As the defendant touched the complainant's arm, she began to scream and cry. The defendant told the complainant to be quiet, and she attempted to leave the house via the front door. The defendant blocked the doorway, as the complainant continued to scream. The defendant suddenly stopped and said that he was just playing. The defendant then called the complainant a "scaredy-ass," opened the front door and ran out of the house. Approximately ten minutes elapsed from the time the defendant first arrived at the home to the time that he departed.

The complainant closed the door and locked it. She immediately called a friend, who lived up the street, to warn her that the defendant was running in her direction. She was unable to contact her friend. The complainant then unsuccessfully called both of her parents. Finally, she reached her boyfriend by telephone and told him what had happened. She then called the police and gave a brief description of the defendant.

Within approximately ten minutes, Officer Joseph Kalson of the Fairfield police department arrived at the

home. The complainant again gave a description of the defendant, and Kalson broadcast over the police radio that the original description was correct. Officer Christopher Ioli of the Fairfield police department also responded to the call. Ioli observed the defendant jogging on a street. By the time that Ioli had turned his vehicle around and turned down that street, the defendant was sitting on the front lawn of a house. According to Ioli, the defendant was sweating and appeared slightly nervous. Ioli conducted a patdown search for weapons but found none. The complainant was transported to that location, where she identified the defendant, and the defendant was taken into custody.

I

The defendant's first claim is that the evidence presented at trial was insufficient to sustain the conviction for kidnapping in the second degree with a firearm. Specifically, the defendant claims that the state failed to prove beyond a reasonable doubt one of the elements of the crime, namely, that he had the specific intent to cause the result of preventing the complainant's liberation by physical force or intimidation. If the defendant is correct, he may not be tried again for this crime and is entitled to a judgment of acquittal on the charge of kidnapping in the second degree with a firearm. See *State* v. *Iovieno*, 14 Conn. App. 710, 726, 543 A.2d 766, cert. denied, 209 Conn. 805, 548 A.2d 440 (1988).

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable

doubt." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 542, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006). "This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . In conducting our review, we are mindful that the finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the jury, and, therefore, we must afford those determinations great deference." (Citation omitted; internal quotation marks omitted.) *State* v. *Lopez*, 93 Conn. App. 257, 262, 889 A.2d 254, cert. granted on other grounds, 277 Conn. 919, 895 A.2d 791 (2006).

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense[s], each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . [I]n determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . [A]n inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference." (Citation omitted; internal quotation marks omitted.) *State* v. *Fagan*, 92 Conn. App. 44, 49, 883 A.2d 8, cert. denied, 276 Conn. 924, 888 A.2d 91 (2005).

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or

facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Liborio A.*, 93 Conn. App. 279, 284, 889 A.2d 821 (2006).

To find the defendant guilty of kidnapping in the second degree with a firearm in violation of § 53a-94a (a), it was necessary for the jury to find that the state proved beyond a reasonable doubt that he (1) restrained the complainant, (2) with the intent to prevent her liberation, (3) by using or threatening to use physical force or intimidation and (4) in the commission of such offense, he represented by his words or conduct that he possessed a pistol, revolver, machine gun, shotgun, rifle or other firearm. See General Statutes §§ 53a-94a (a), 53a-94 (a), 53a-91 (2) (B). We recognize that kidnapping in the second degree with a firearm is a specific intent crime.

"It is well established that [t]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the jury to decide." (Internal quotation marks omitted.) *State* v. *Watson*, 50 Conn. App. 591, 605, 718 A.2d 497, cert. denied, 247 Conn. 939, 723 A.2d 319 (1998), cert. denied,

526 U.S. 1058, 119 S. Ct. 1373, 143 L. Ed. 2d 532 (1999), cert. dismissed, 255 Conn. 953, 772 A.2d 153 (2001).

The jury could have reasonably found that the state proved beyond a reasonable doubt that the defendant intended to cause the result of preventing the complainant's liberation. There was sufficient evidence in the complainant's testimony that the defendant possessed the requisite intent. The complainant testified that the defendant stood between her and the front door and closed the front door. According to the complainant, the defendant placed his hand in the rear pocket of his trousers, informed her he had a gun and told her to go into the den. After approximately three minutes, the defendant ordered the complainant to stand and explained that he wanted to go upstairs. The defendant, with one hand remaining in his rear pocket, placed his other hand on the complainant's elbow to hurry her along. As the defendant touched the complainant's arm, she began to scream and cry. The defendant told the complainant to be quiet, and she attempted to leave the house via the front door. The defendant blocked the doorway. On the basis of this evidence, it was reasonable for the jury to infer from the defendant's conduct that he possessed the specific intent to prevent the complainant's liberation.[5] The defendant is not entitled to a judgment of acquittal on the charge of kidnapping in the second degree with a firearm.

## II

The defendant next claims that, by reading the entire definition of intent set out in General Statutes § 53a-3 (11),[6] the court permitted the jury to find him guilty by

---

[5] General Statutes § 53a-94 (a) provides that "[a] person is guilty of kidnapping in the second degree when he abducts another person." "Abduct," as defined in General Statutes § 53a-91 (2), "means to restrain a person with intent to prevent his liberation by . . . (B) using or threatening to use physical force or intimidation."

[6] General Statutes § 53a-3 (11) provides in relevant part: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

finding that he intended only to engage in conduct rather than to cause a result. We disagree.

In its instructions to the jury, the court first read the statutory definition of intent contained in § 53a-3 (11). Specifically, the court instructed the jury that "[i]ntent relates to the condition of mind of the person who commits the act, his purpose in doing it. As defined by our statute, a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result or to engage in such conduct." The court then instructed the jury on the elements of kidnapping in the second degree with a firearm.[7] The defendant did not object to the court's instruction at trial and now seeks review pursuant to State v. Golding, 213 Conn. 233, 567 A.2d 823 (1989),[8] and the plain error doctrine. See Practice Book § 60-5.

---

[7] The court instructed the jury that "[a] person is guilty of kidnapping in the second degree with a firearm when he commits kidnapping in the second degree and in the commission of such offense, he represents by his words or conduct that he possesses a firearm. A person is guilty of kidnapping in the second degree when he abducts another person. . . . Abduct means to restrain a person with intent to prevent her liberty by either secreting or by hiding her in a place where she is not likely to be found or by using or threatening to use physical force or intimidation. . . .

"As you can see, the abduction and restraining must be intentionally. There must be an intent to interfere substantially with the victim's liberty, an intent to prevent the victim's liberation either by secreting or hiding her in a place where she is not likely to be found or by using or threatening to use physical force or intimidation."

Later in its instruction, the court stated: "Abduction may be established by satisfactory proof that the victim has been unlawfully restrained and that with the intent to . . . prevent her liberation, the defendant restrained her by using or threatening to use physical force or intimidation." "To sum up, then, if you find that the defendant restrained [the complainant] with the intent to prevent her liberation by using or threatening to use physical force or intimidation on her and, in the commission thereof, he represented by his words or conduct that he possessed a firearm, you would find him guilty under the first count. If, however, you do not find all of the elements of kidnapping in the second degree with a firearm to have been proven, you should find him not guilty in the first count."

[8] In Golding, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following

The defendant's claim satisfies the first two prongs of *Golding* because the record is adequate for review and "[a]n improper instruction on an element of an offense . . . is of constitutional dimension. . . . Due process requires that the state establish beyond a reasonable doubt every essential fact necessary to establish the crime charged . . . including intent where intent is one of those elements." (Citations omitted; internal quotation marks omitted.) *State* v. *DeBarros*, 58 Conn. App. 673, 680, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000). The defendant's claim, however, does not satisfy the third prong of *Golding* because it is not clear from the record that a constitutional violation exists.

"It is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Austin*, 244 Conn. 226, 235, 710 A.2d 732 (1998).

We first note that the specific intent to abduct another person, namely, the restraint of another person with the intent to prevent that person's liberation, is an essential

conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

element of the crime of kidnapping in the second degree with a firearm. See General Statutes §§ 53a-91 (2) (B), 53a-94 (a), 53a-94a (a). "Due process requires that the state establish beyond a reasonable doubt every essential fact necessary to establish the crime charged . . . including intent where intent is one of those elements. . . . [A]n improper instruction on an element of an offense . . . is of constitutional dimension." (Citation omitted; internal quotation marks omitted.) *State* v. *Austin*, supra, 244 Conn. 235.

"Although we have stated that [i]t is improper for the trial court to read an entire statute to a jury when the pleadings or the evidence support a violation of only a portion of the statute . . . that is not dispositive. We must next determine whether it is reasonably possible that the jury was misled . . . ." (Citation omitted; internal quotation marks omitted.) Id., 235–36.

The defendant cites *DeBarros* in support of his contention that the instructions as a whole misled the jury to an incorrect verdict. In *DeBarros*, the court read the intent to "engage in conduct" language in its initial charge and two supplemental charges. *State* v. *DeBarros*, supra, 58 Conn. App. 683. The court also referred back to that language seven times during its instructions to the jury. Id. We conclude that the present case more closely resembles *State* v. *Prioleau*, 235 Conn. 274, 664 A.2d 743 (1995), and *State* v. *Austin*, supra, 244 Conn. 226, than *DeBarros*.

In *Prioleau*, the trial court read the entire statutory definition of intent in a murder trial when it was not warranted by the pleadings or evidence. *State* v. *Prioleau*, supra, 235 Conn. 322. Although our Supreme Court agreed with the defendant that the portion of the instruction regarding the intent to engage in the proscribed conduct was irrelevant to a murder prosecution, it rejected his claim that the instruction warranted

reversal of his conviction. Id. The court observed that the trial court referred to the intent to engage in conduct only once and repeatedly instructed the jury that in order to find the defendant guilty of murder, it had to find that he intended to cause the death of the victim. Id.

In *Austin*, the trial court, in its preliminary instructions, read the entire statutory definition of intent contained in § 53a-3 (11). *State* v. *Austin*, supra, 244 Conn. 232. The court, again, read the entire statutory definition when the jury sought a clarification of intent. Id., 234. Our Supreme Court concluded that "any possible risk of jury confusion over the element of intent was eliminated by the trial court's numerous proper instructions on the elements of murder. Specifically, the trial court expressly stated both in its initial charge and supplemental charge that in order to find the defendant guilty of murder, the state must prove beyond a reasonable doubt that the defendant specifically intended to cause the death of the victim." Id., 236–37.

We have reviewed the court's entire charge. We note that the court repeatedly instructed the jury that it had to find that the defendant had the intent to prevent the complainant's liberation to find him guilty of kidnapping in the second degree with a firearm. After reading the entire definition of intent from the statute, the court, on at least five occasions, referred to the specific intent element of kidnapping in the second degree with a firearm. The court's only reference to the intent to "engage in conduct" was contained in its recitation of the language of the statute. Under these circumstances, the jury could conclude only that the state needed to prove beyond a reasonable doubt, on the kidnapping charge, that the defendant intended to cause the result of preventing the complainant's liberation. The defendant is not entitled to a new trial on the charge of kidnapping in the second degree with a firearm.

## III

The defendant asserts that the court improperly refused to instruct the jury on criminal trespass in the second degree as a lesser included offense of burglary in the second degree with a firearm. Specifically, the defendant claims that the court improperly concluded that it was possible to commit burglary in the second degree with a firearm without committing criminal trespass in the second degree. We agree with the defendant.

As a preliminary matter, we set forth the appropriate standard of review. "Whether one offense is a lesser included offense of another presents a question of law. . . . Accordingly, our review is de novo. . . . The constitutionality of instructing on lesser included offenses is grounded on the premise that whe[n] one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses. . . . This notice permits each party to prepare a case properly, each cognizant of its burden of proof." (Citation omitted; internal quotation marks omitted.) *State* v. *Greene*, 274 Conn. 134, 155, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006).

"A defendant is entitled to an instruction on a lesser offense if . . . the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant [not guilty] of the

greater offense but guilty of the lesser." *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980).

"In considering whether the defendant has satisfied the requirements set forth in . . . *Whistnant* . . . we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. . . . On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense." (Citations omitted; internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 220-21, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

In the present case, the information charged the defendant with burglary in the second degree with a firearm. The elements of burglary in the second degree with a firearm are (1) that the defendant entered or remained unlawfully in a dwelling, (2) that a person other than a participant in the crime was actually present in such dwelling, (3) that the defendant intended to commit a crime therein and (4) that in the commission of such offense the defendant represented by his words or conduct that he possessed a pistol, revolver, rifle, shotgun, machine gun or other firearm.[9] General Statutes §§ 53a-102 (a) (2), 53a-102a (a). The defendant submitted to the trial court a request to charge and argued that the court should instruct the jury on criminal trespass in the second degree, satisfying the first prong of *Whistnant*. The elements of criminal trespass in the second degree are that the defendant (1) entered or remained in a building and (2) knew that he was not

[9] " '[D]welling' means a building which is usually occupied by a person lodging therein at night . . . ." General Statutes § 53a-100 (a) (2).

licensed or privileged to do so.[10] General Statutes § 53a-108 (a).

"The second prong of *Whistnant* derives from our [Supreme Court's] earlier decision in *State* v. *Brown*, 163 Conn. 52, 301 A.2d 547 (1972). In *Brown*, [the Supreme Court] stated that [c]ourts have taken three approaches in determining whether a crime is a lesser included crime when the evidence would support a conclusion that the lesser crime was committed: (1) The included crime may be one consisting solely of elements which must always be present for the greater crime to have been committed; (2) it may be one consisting solely of elements which must have been present for the greater offense to have been committed in the manner described by the information or bill of particulars thereto; [or] (3) . . . it may be a crime which the evidence suggests and which could have been included in the information. The Connecticut rule on this question follows the second course . . . .

"That second course comprises the second prong in *Whistnant*, which encompasses the cognate pleadings approach. The cognate-pleadings approach . . . does not insist that the elements of the lesser offense be a subset of the higher offense. It is sufficient that the lesser offense have certain elements in common with the higher offense, which thereby makes it a cognate or allied offense even though it also has other elements not essential to the greater crime. [In addition], the relationship between the offenses is determined not by a comparison of statutory elements in the abstract, but by reference to the pleadings in the case. The key ordinarily is whether the allegations in the pleading charging the higher offense . . . include all of the elements of

---

[10] General Statutes § 53a-108 (a) provides: "A person is guilty of criminal trespass in the second degree when, knowing that he is not licensed or privileged to do so, he enters or remains in a building."

the lesser offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Tomlin*, 266 Conn. 608, 617–18, 835 A.2d 12 (2003).

Examining the crime of burglary in the second degree with a firearm, as described in the information filed by the state, we conclude that the defendant could not have committed burglary in the second degree with a firearm without also having committed criminal trespass in the second degree. The court relied solely on the difference between a dwelling and a building in concluding that the defendant could have committed the greater offense without having committed the lesser offense. The state, citing *State* v. *Coleman*, 242 Conn. 523, 700 A.2d 14 (1997), asserts that criminal trespass in the second degree is not a lesser included offense of the crime of burglary in the second degree with a firearm because a defendant could have entered or remained unlawfully in a *dwelling* without having entered or remained in a *building*.[11]

Our legislature has defined dwelling as a type of building. See General Statutes § 53a-100 (a) (2). Specifically, a dwelling is "a building which is usually occupied by a person lodging therein at night . . . ." General Statutes § 53-a-100 (a) (2). The term "building" as used in our statute for criminal trespass carries its ordinary

---

[11] In *State* v. *Coleman*, supra, 242 Conn. 523, the issue was whether General Statutes § 53a-102, burglary in the second degree, was a lesser included offense of General Statutes § 53a-101 (a) (1), burglary in the first degree. *State* v. *Coleman*, supra, 532. The court concluded that "under § 53a-101 (a) (1), the state need prove only . . . that the defendant had burglarized a building. Consequently, it was possible for the defendant to have committed the crime of burglary in the first degree under § 53a-101 (a) (1) in the manner described in the information, that is, by entering a building with the intent to commit a crime therein, without also having committed the lesser offense of entering a dwelling with the intent to commit a crime therein in violation of § 53a-102." Id., 533. The state's reliance on *Coleman* is misplaced. The logical relationship between buildings and dwellings can be summarized in one sentence. All dwellings are buildings but not all buildings are dwellings.

meaning. General Statutes § 53a-100 (a) (1). A building is "anything that is built with walls and a roof, as a house or factory." Webster's New World College Dictionary (4th Ed. 2002).

The information charged the defendant with the crime of burglary in the second degree with a firearm on June 24, 2003, at 4 p.m., at an address in the town of Fairfield. Burglary in the second degree involves a "dwelling." General Statutes § 53a-102 (a). The state, as a result, needed to prove that the defendant burglarized a dwelling. In proving that the defendant burglarized a dwelling, the state necessarily was required to prove that the defendant entered or remained in a building. Consequently, it was impossible for the defendant to have committed the crime of burglary in the second degree with a firearm in the manner described in the information without having committed the lesser offense of criminal trespass in the second degree.

Having determined that the defendant met the first two prongs of *Whistnant*, we now address the third and fourth prongs. "Despite being conceptually distinct parts of the *Whistnant* formulation, the third and fourth prongs are subject to the same evidentiary analysis. . . . [A reviewing court] will, therefore, analyze them simultaneously. The third prong of *Whistnant* requires that 'there [be] some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense. . . .' The fourth prong requires that 'the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser.' " (Citations omitted.) *State* v. *Smith*, 262 Conn. 453, 468–69, 815 A.2d 1216 (2003).

"In *State* v. *Rasmussen*, 225 Conn. 55, 65–73, 621 A.2d 728 (1993), we . . . reviewed the standard of evidence required to satisfy the [third and fourth prongs] of the *Whistnant* test. We there held that there must be sufficient evidence, introduced by either the state or the defendant, or by a combination of their proofs, to justify a finding of guilt of the lesser offense. . . . Although [we] expressly [reject] the proposition that a defendant is entitled to instructions on lesser included offenses based on merely theoretical or possible scenarios . . . we will, however, consider the evidence available at trial in the light most favorable to the defendant's request. . . . [T]he jury's role as fact-finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, supra, 262 Conn. 469–70.

Even though there is sufficient evidence to prove, beyond a reasonable doubt, that the defendant committed the charged crimes, a defendant may still satisfy the third and fourth prongs of *Whistnant*. See *State* v. *Sivri*, 231 Conn. 115, 139–40, 646 A.2d 169 (1994). Furthermore, "[s]o long as the evidence reasonably can justify a finding of guilt of the lesser offense . . . a defendant's claim of innocence [does] not automatically preclude him from requesting an instruction on lesser included [offenses] that require a less serious degree of culpable intent." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, supra, 262 Conn. 475.

Here, a combination of the defendant's testimony and the testimony of the complainant could justify a conviction of criminal trespass in the second degree. According to the complainant, she never invited the defendant into her home or willingly permitted him to

use her bathroom. The complainant testified that the defendant told her that he had a gun in his pocket and that she observed him reaching into the rear pocket of his trousers, as if he were holding a weapon. The complainant further testified that the defendant's actions, specifically his request to go upstairs, caused her to believe he would rape or kill her.

The defendant's testimony painted a completely different picture of the events. The defendant testified that, after a brief conversation with the complainant in the doorway, he asked to use the bathroom, and the complainant permitted him to use the bathroom, escorting him through the foyer to its location. The defendant stated that, after using the bathroom, he walked with the complainant to the den where he continued with his sales pitch and engaged in some flirtatious conversation. According to the defendant, the complainant's demeanor changed after he inquired as to whether she and her friends would be interested in partying with his friends at a hotel in Stratford later in the evening. The complainant declined his invitation, and the defendant called her a "scaredy-ass." According to the defendant, his comment made the complainant mad, and she told him he had to leave. The defendant testified that he left the residence and continued to knock on doors in the neighborhood. According to the defendant's testimony, he did not represent to the complainant, by his words or conduct, that he possessed a firearm. The defendant also denied that he possessed any intent to commit a crime within the victim's residence.

This case was reduced to a credibility determination between the complainant and the defendant. Their testimony diverged on all of the elements of burglary in the second degree with a firearm, particularly those elements that differentiate it from criminal trespass in the second degree. A combination of their testimony, however, provided sufficient proof to justify a finding

of guilt of the lesser offense. The proof on the elements that differentiate burglary in the second degree with a firearm, namely, intent and possession of a firearm, was sufficiently in dispute to permit the jury to consistently find the defendant not guilty of the greater offense but guilty of the lesser offense. The judgment of conviction for burglary in the second degree with a firearm, therefore, must be reversed and the case remanded for a new trial.

The judgment is reversed only as to the conviction of burglary in the second degree with a firearm and the case is remanded for a new trial on that charge. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.