******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

GAYLORD SALTERS *v.* COMMISSIONER
OF CORRECTION
(AC 38371)

Lavine, Mullins and Bear, Js.

*Syllabus*

The petitioner, who had been convicted of various crimes in connection
with a gang related shooting, filed a second petition for a writ of habeas
corpus, claiming, inter alia, that the counsel who represented him in
connection with his first habeas petition provided ineffective assistance
in failing to raise claims that the petitioner's criminal trial counsel was
ineffective for not objecting to erroneous jury instructions or requesting
an evidentiary hearing pursuant to *Brady* v. *Maryland* (373 U.S. 83),
which the petitioner claimed would have disclosed material, exculpatory
impeachment evidence. He also alleged that his first habeas counsel
was ineffective for having failed to raise claims that the petitioner's
appellate counsel on direct appeal was ineffective for having failed to
raise the *Brady* violation and a claim of prosecutorial impropriety. The
habeas court rendered judgment denying the second habeas petition,
from which the petitioner, on the granting of certification, appealed to
this court. *Held*:

1. The record was inadequate to review the petitioner's claim that the habeas
court erred in failing to apply the strict standard of materiality to his
*Brady* claims, in which he alleged that the prosecutor knowingly relied
on false testimony; although the amended habeas petition included fac-
tual allegations that the prosecution knowingly relied on false testimony,
the habeas court's memorandum of decision was devoid of any factual
findings or legal analysis involving the allegations of false testimony,
and this court would not address a claim that was not decided by the
habeas court.

2. The petitioner could not prevail on his claim that the habeas court erred
in denying his claim that his first habeas counsel was ineffective for
having failed to raise a claim that the petitioner's trial counsel provided
ineffective assistance by failing to object to certain jury instructions on
intent, which included the full statutory definition for specific and gen-
eral intent crimes, even though the petitioner had been charged with
specific intent crimes only; although it was improper for the trial court
to include the full statutory definition of intent in its charge to the jury,
it was not reasonably possible that the jury was misled and the petitioner
was not harmed thereby, as the trial court, in its instructions on the
intent required for the crimes charged, repeatedly referred to the proper
specific intent required for the commission of those crimes so as to
mitigate any harm to the petitioner, whereas it gave the erroneous
instruction once.

3. The habeas court's determination that appellate counsel made a reason-
able strategic decision to forgo on direct appeal a claim of prosecutorial
impropriety was supported by the record, the evidence having shown
that counsel decided to forgo the claim because she considered it to
be meritless, and, therefore, because appellate counsel was not deficient
for having failed to bring such a claim, a claim of ineffective assistance
of first habeas counsel for failing to claim that appellate counsel was
ineffective on that ground could not stand; moreover, although certain
testimony by a state's witness could have indicated that he was pressured
by the police to make a statement, the prosecutor's statements to the
jury that the witness was not told to identify the petitioner as the driver
of the vehicle from which gunshots were fired and was not directed what
to say in his statement to the police were reasonable characterizations of
the evidence and were not improper.

Argued April 11—officially released August 29, 2017

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of

Tolland and tried to the court, *Cobb, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Arthur L. Ledford*, assigned counsel, for the appellant (petitioner).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Patrick J. Griffin*, state's attorney, and, on the brief, *Adrienne Maciulewski*, assistant state's attorney, for the appellee (respondent).

*Opinion*

BEAR, J. The petitioner, Gaylord Salters, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the habeas court improperly (1) failed to apply the strict standard of materiality to his claim of a *Brady* violation,[2] which included factual allegations that the prosecution knowingly relied on false testimony; (2) denied his claim of ineffective assistance by his prior habeas trial counsel (habeas counsel) for failing to raise a claim that the petitioner's criminal trial counsel (trial counsel) was ineffective for failing to raise a claim of instructional error;[3] (3) failed to apply the "findings" that this court made in his appeal from the judgment in his first habeas case; and (4) found that the decision of his appellate counsel on direct appeal (appellate counsel) to forgo raising a prosecutorial impropriety claim was a reasonable strategic decision. We affirm the judgment of the habeas court.

As this court previously stated, the jury reasonably could have found the following facts in the petitioner's criminal trial. "On November 24, 1996, the [petitioner] participated in a gang related shooting in New Haven. The [petitioner], a member of the Island Brothers street gang, drove behind an automobile being driven by Daniel Kelley. Either the [petitioner] or an accomplice riding in his automobile fired on Kelley's automobile. Kelley sustained a gunshot wound to his shoulder and lost control of his automobile, causing it to crash into two vehicles parked nearby. Kelley's passenger, Kendall Turner, a member of the Ghetto Boys street gang, sustained a gunshot wound to his elbow. The Island Brothers and the Ghetto Boys, both of which were involved in illegal activity, had a hostile relationship marked by gun violence between rival gang members." *State* v. *Salters*, 89 Conn. App. 221, 222–23, 872 A.2d 933, cert. denied, 274 Conn. 914, 879 A.2d 893 (2005).

The following factual and procedural background is relevant to our resolution of the petitioner's appeal. Following a jury trial, the petitioner was convicted of two counts of assault in the first degree in violation of General Statutes §§ 53a-59 (a) (5) and 53a-8, and one count of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (5) and 53a-48 (a). Id., 222. The petitioner directly appealed to this court, claiming that the trial court violated his right to present a defense by precluding him from presenting testimony from an alibi witness at trial. Id. This court affirmed his conviction. Id., 236.

In 2006, the petitioner filed his first petition for a writ of habeas corpus, which he subsequently amended. In his second amended petition, he claimed that he was denied due process because the prosecutor withheld material, exculpatory impeachment information, which

constituted a *Brady* violation, in that the prosecutor failed to provide such information pertaining to Kendall Turner, a key witness for the state. *Salters* v. *Commissioner of Correction*, 141 Conn. App. 81, 83–84, 60 A.3d 1004, cert. denied, 308 Conn. 932, 64 A.3d 330 (2013). He also alleged ineffective assistance of counsel because his trial counsel failed (1) to sufficiently investigate, discover, and present to the jury information regarding Turner's statement to the police and (2) to conduct sufficient discovery.[4] Id., 84. After conducting a habeas trial, the court, *Fuger, J.*, rendered judgment denying the petition. Id. The habeas court determined that defense counsel's testimony was more credible than the petitioner's testimony, that defense counsel adequately investigated Turner's criminal history prior to trial, and that the prosecutor disclosed all of the information he had pertaining to Turner. Id. The petitioner subsequently appealed to this court.

On appeal, this court concluded that the habeas court did not err in rejecting the petitioner's claim of ineffective assistance of counsel. Id., 86. Additionally, this court held that the petitioner's *Brady* claim was procedurally defaulted because, at the time of trial and his direct appeal, he knew of the existence of the records that he claimed in his habeas petition were unlawfully withheld, and he could have raised the alleged *Brady* violation at trial by requesting an evidentiary hearing on the potential *Brady* evidence or on direct appeal by raising a *Brady* claim. Id., 89–90. Consequently, this court affirmed the habeas court's judgment denying the petition; id., 91; and our Supreme Court denied certification to appeal. *Salters* v. *Commissioner of Correction*, 308 Conn. 932, 64 A.2d 330 (2013).

On June 2, 2010, the then self-represented petitioner filed a second petition for a writ of habeas corpus, which is the subject of the present appeal. The habeas court appointed counsel for him. In his fifth amended petition, the petitioner set forth seventeen counts, four of which are relevant to this appeal. In count one, the petitioner asserted that his habeas counsel provided ineffective assistance by failing to allege that his trial counsel provided ineffective assistance by failing to request an evidentiary hearing, pursuant to *Brady*, which would have revealed material, exculpatory impeachment evidence. Additionally, in count fourteen, the petitioner claimed that his habeas counsel provided ineffective assistance by failing to allege that trial counsel provided ineffective assistance when he failed to object to erroneous jury instructions, which prejudiced the petitioner's case. In count six, the petitioner asserted that his habeas counsel provided ineffective assistance by failing to allege that appellate counsel provided ineffective assistance by failing to "raise the *Brady* violation . . . ." Additionally, in count seven, the petitioner claimed that his habeas counsel provided ineffective assistance by failing to allege that his appel-

late counsel provided ineffective assistance by failing to raise a claim of prosecutorial impropriety because the prosecutor misstated evidence during closing arguments.

On July 22, 2015, the habeas court, *Cobb, J.*, rendered judgment denying the petition. As to count one, the court found that the petitioner had failed to establish prejudice by proving that there was a reasonable probability that the result in his criminal trial would have been different. The court determined that further impeachment of Turner would not have added significantly to his cross-examination. On count fourteen, the court found that the jury instruction was appropriate and, therefore, the petitioner had failed to prove that his trial counsel's or his habeas counsel's performance was deficient or that he was prejudiced. As to count six, the court found that there was an inadequate record on direct appeal to raise a previously unraised *Brady* claim to satisfy *Golding* review.[5] Additionally, the court had already found that the petitioner failed to prove prejudice regarding the claimed *Brady* violation and that appellate counsel's decision to forgo such a claim was a strategic decision. Accordingly, the court denied this claim as to appellate counsel. Finally, on count seven, the court found that there was no evidence that appellate counsel could have satisfied the requirements of *Golding* to prevail on a previously unraised claim of prosecutorial impropriety.[6] Additionally, the habeas court found that appellate counsel's decision to forgo this claim, which she considered weak, was a reasonable strategic decision and that the petitioner failed to establish that he would have prevailed on such a claim. Consequently, the court denied the petition for a writ of habeas corpus. Thereafter, the habeas court granted the petitioner certification to appeal, and this appeal followed.

"We begin with the applicable standard of review and the law governing ineffective assistance of counsel claims. The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

"To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was

not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citation omitted; internal quotation marks omitted.) *Breton* v. *Commissioner of Correction*, 325 Conn. 640, 668–69, 159 A.3d 1112 (2017).

"[When] applied to a claim of ineffective assistance of prior habeas counsel, the *Strickland* standard requires the petitioner to demonstrate that his prior habeas counsel's performance was ineffective and that this ineffectiveness prejudiced the petitioner's prior habeas proceeding. . . . [T]he petitioner will have to prove that one or both of the prior habeas counsel, in presenting his claims, was ineffective and that effective representation by habeas counsel establishes a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . . Therefore, as explained by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992), a petitioner claiming ineffective assistance of habeas counsel on the basis of ineffective assistance of [trial] counsel must essentially satisfy *Strickland* twice: he must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his [trial] counsel was ineffective. . . . We have characterized this burden as presenting a herculean task . . . ." (Citations omitted; internal quotation marks omitted.) *Mukhtaar* v. *Commissioner of Correction*, 158 Conn. App. 431, 438–39, 119 A.3d 607 (2015).

Our standard of review for claims of ineffective assistance of appellate counsel is similar. "In regard to the second prong [of *Strickland*], our Supreme Court distinguished the standards of review for claims of ineffective trial counsel and ineffective appellate counsel. . . . For claims of ineffective appellate counsel, the second prong considers whether there is a reasonable probability that, but for appellate counsel's failure to raise the issue on appeal, the petitioner would have prevailed in his direct appeal, i.e., reversal of his conviction or granting of a new trial. . . . This requires the reviewing court to [analyze] the merits of the underlying claimed error in accordance with the appropriate appellate standard for measuring harm." (Citations omitted; internal quotation marks omitted.) *Moore* v. *Commissioner of Correction*, 119 Conn. App. 530, 535, 988 A.2d 881, cert. denied, 296 Conn. 902, 991 A.2d 1103 (2010).

I

The petitioner claims that the habeas court erred in failing to apply the "strict standard of materiality"[7] to his *Brady* claims in which he alleged that the prosecution knowingly relied on false testimony. We do not review this claim because the petitioner has failed to provide this court with an adequate record for review.

Although the petitioner's fifth amended petition included factual allegations that the prosecution knowingly relied on false testimony, the habeas court's memorandum of decision is devoid of any factual findings or legal analysis involving the false testimony allegations raised by the petitioner. "It is fundamental that claims of error must be distinctly raised and decided in the [habeas] court before they are reviewed on appeal. As a result, Connecticut appellate courts will not address issues not decided by the [habeas] court." (Internal quotation marks omitted.) *Bozelko* v. *Commissioner of Correction*, 162 Conn. App. 716, 717 n.1, 133 A.3d 185, cert. denied, 320 Conn. 926, 133 A.3d 458 (2016); see also *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims "neither addressed nor decided" by trial court not properly before appellate tribunal). "It is the responsibility of the appellant to provide an adequate record for review . . . ." Practice Book § 60-5. Accordingly, we cannot and do not address the petitioner's claim that the court applied the wrong standard of materiality to his *Brady* claims.[8]

## II

The petitioner claims that the habeas court erred in denying his assertion that his habeas counsel was ineffective in failing to raise a claim that trial counsel was ineffective for failing to object to the jury instructions because they contained errors that made it easier for the jury to find him guilty. Specifically, the petitioner argues that the trial court's charge to the jury included the full statutory definition of "acting intentionally," which included the definitions for both specific and general intent. As the petitioner was charged only with specific intent crimes—two counts of assault in the first degree and one count of conspiracy to commit assault in the first degree—he argues that the jury was allowed to find him guilty of specific intent crimes while utilizing the lower standard of general intent. Because this improper definition was repeatedly referred to throughout the jury charge, the petitioner argues that the jury was misled. We agree that it was improper for the trial court to have included the full statutory definition of intent but conclude that the petitioner was not harmed thereby or by habeas counsel's failure to raise that claim in the petitioner's first habeas proceeding.

The following additional facts are relevant to the resolution of this claim. The trial court instructed the jury as follows: "Section 53a-59 (a) (5) of the Connecticut General Statutes provides that a person is guilty of assault in the first degree when: With intent to cause physical injury to another person, he causes such injury to such person by means of the discharge of a firearm. . . .

"For you to find the [petitioner] guilty of this charge,

the state must prove each of the following elements beyond a reasonable doubt: (1) that the [petitioner] intended to cause physical injury to another person; (2) that the [petitioner] caused physical injury to that person; and (3) that he caused that injury by means of the discharge of a firearm.

"The state must first prove beyond a reasonable doubt that the [petitioner] intended to cause physical injury to another person. What the [petitioner] intended is a question of fact for you to determine.

"Our statutes provide that a person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct."

After setting forth the trial court's instruction on the elements of assault in the first degree and comparing it to the model jury instruction on the same charge, the habeas court found that the trial court's instruction was appropriate. The court therefore concluded that the petitioner had failed to meet his burden of proving that trial counsel's or habeas counsel's performance was deficient or that he was prejudiced by any deficient performance.

The standard of review for claims of instructional impropriety is well established. "[I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Revels*, 313 Conn. 762, 784, 99 A.3d 1130 (2014), cert. denied,    U.S.   , 135 S. Ct. 1451, 191 L. Ed. 2d 404 (2015). "An improper instruction on an element of an offense . . . is of a constitutional dimension." (Internal quotation marks omitted.) *State* v. *Flores*, 301 Conn. 77, 83, 17 A.3d 1025 (2011). "Finally, because a challenge to the validity of a jury instruction presents a question of law, we exercise plenary review." *State* v. *Jones*, 320 Conn. 22, 53, 128 A.3d 431 (2015).

"It has become axiomatic, through decisional law, that it is improper for a court to refer in its instruction

to the entire definitional language of [General Statutes] § 53a-3 (11), including the [general] intent to engage in conduct, when the charge relates to a crime requiring only the [specific] intent to cause a [precise] result." (Internal quotation marks omitted.) *Barlow* v. *Commissioner of Correction*, 131 Conn. App. 90, 95 n.2, 26 A.3d 123, cert. denied, 302 Conn. 937, 28 A.3d 989 (2011). "Although [our appellate courts] have stated that [i]t is improper for the trial court to read an entire statute to a jury when the pleadings or the evidence support a violation of only a portion of the statute . . . that is not dispositive. We must determine whether it is reasonably possible that the jury was misled by the trial court's instructions." (Citation omitted; internal quotation marks omitted.) *State* v. *DeJesus*, 260 Conn. 466, 474, 797 A.2d 1101 (2002). Our appellate courts consistently have held that the risk of juror confusion from an improper intent instruction has been "eliminated by the trial court's numerous proper instructions on the elements of [the charged offense]." (Internal quotation marks omitted.) Id., 475; see also, e.g., *State* v. *Montanez*, 277 Conn. 735, 745–47, 894 A.2d 928 (2006) (holding no reasonable possibility jury misled by general instruction or reference to principle of general intent eleven times because trial court repeatedly gave clear instructions on specific intent required for manslaughter); *State* v. *Austin*, 244 Conn. 226, 236–37, 710 A.2d 732 (1998) (any possible risk of jury confusion over intent element eliminated by numerous proper instructions on elements of murder and because trial court distinguished intent required for manslaughter and murder); *State* v. *Prioleau*, 235 Conn. 274, 321–22, 664 A.2d 743 (1995) (holding not reasonable to believe jury misled by single use of instruction on general intent that contained entire statutory definition of intent when trial court repeatedly instructed jury on specific intent required for murder); but see *State* v. *Sivak*, 84 Conn. App. 105, 112–13, 852 A.2d 812 (holding that jury in assault case misled by improper intent instruction that included statutory definition of intentionally and focused on intended conduct rather than intended result because key issue was whether defendant intended to cause serious physical injury where defendant claimed self-defense and both victim and defendant were intoxicated), cert. denied, 271 Conn. 916, 859 A.2d 573 (2004); *State* v. *Lopes*, 78 Conn. App. 264, 271–72, 826 A.2d 1238 (holding reasonably possible that jury misled because general intent instruction given with definition of murder and this court did not observe numerous proper intent instructions), cert. denied, 266 Conn. 902, 832 A.2d 66 (2003).

"Assault in the first degree is a specific intent crime. It requires that the criminal actor possess the specific intent to cause serious physical injury to another person." (Internal quotation marks omitted.) *State* v. *Sivak*, supra, 84 Conn. App. 110. "Conspiracy . . . is a specific

intent crime, with the intent divided into two elements: [1] the intent to agree or conspire and [2] the intent to commit the offense which is the object of the conspiracy." (Internal quotation marks omitted.) *State* v. *Pond*, 315 Conn. 451, 467–68, 108 A.3d 1083 (2015).

The trial court in the present case instructed the jury on the entire statutory definition of intentionally under § 53a-3 (11).[9] The court referred the jury to that definition once. By quoting the definition of "intentionally" contained in § 53a-3 (11), the court gave instructions on both general intent—the intent to engage in conduct—and specific intent—causing a desired result. The court, thus, improperly provided a general intent instruction when the only crimes with which the petitioner was charged were specific intent crimes.

Nonetheless, we conclude that, despite the trial court's having improperly given the general intent instruction, it is not reasonably possible that the jury was misled. In defining assault in the first degree as to count one, the trial court referred to the specific intent required by the first element. The trial court explained that to be guilty of assault in the first degree as an accessory, the petitioner must have had the same criminal intent required for assault in the first degree—intent to cause physical injury. Additionally, the court instructed that to be found guilty as an accessory, the petitioner must have intended to aid in the commission of assault in the first degree.

In defining assault in the first degree in the second count, the trial court referred the jury to the elements of that crime and instructed that the state must have proven all of the elements of the crime beyond a reasonable doubt. The first element of assault in the first degree, as explained to the jury, includes the intent to cause physical injury—specific intent.

In defining conspiracy to commit assault in the first degree, the trial court explained that the state needed to prove beyond a reasonable doubt that the petitioner agreed with one or more persons to engage in conduct constituting a crime. In explaining this first element of conspiracy, the trial court referred the jury to the elements of assault in the first degree. When the trial court instructed the jury on the third element of conspiracy—intent on the part of the petitioner that conduct constituting the crime be performed—the trial court explained that the state must have proven that "the [petitioner] had the specific intent to violate the law when he entered into the agreement to engage in conduct constituting a crime." At this point, however, the trial court referred the jury to its previous instruction "on the law pertaining to intent in [its] instructions on the first count."

We conclude that this case is akin to those in which our courts have determined that repeated proper

instructions mitigated any harm caused by the improper general intent instruction, such that it is not reasonable to conclude that the jury was misled. In its instructions on the intent required for accessory to assault in the first degree, the trial court at least thirteen times referred to the specific intent required for assault and accessorial liability. The trial court referred the jury to its instruction on the elements of assault in the first degree, which included the specific intent to cause physical injury, five times in its instruction on the second count of assault in the first degree. In instructing the jury on conspiracy to commit assault in the first degree, the court at least four times explained that the jury must find that the petitioner had the specific intent to participate in a conspiracy and, by reference to the elements of assault in the first degree, the specific intent to commit assault in the first degree.

The trial court's jury instruction included more than twenty references to the specific intent required for the crimes charged in contrast with two improper uses of a general intent instruction. Although the number of proper intent instructions given alone is not the measure of whether an improper intent instruction has been sufficiently ameliorated; *State* v. *Montanez*, supra, 277 Conn. 746 ("A quantitative 'litmus test' measuring how frequently a trial court gives an irrelevant instruction is . . . insufficient to establish an instruction's tendency to mislead the jury. The tendency of an irrelevant instruction to mislead the jury instead must be considered in the context of the whole charge."); in the context of the whole charge, we are not convinced that it is reasonably possible that the court's improper reading and reference to the full statutory language of general and specific intent misled the jury.

The petitioner analogizes this case to *State* v. *DeBarros*, 58 Conn. App. 673, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000), in which this court held that it was reasonably possible that the jury was misled when the trial court gave the same improper intent instruction ten times. Id., 682–83. After reading the definition of murder to jury, the trial court in *DeBarros* instructed: "There are two elements that the state has to prove to you beyond a reasonable doubt. The first is that the defendant had the intent to cause the death of another person, [the victim]. Second . . . I'll now go through these two elements with you one by one and explain them to you in a little more detail. The first element is that the defendant had the intent to cause the death of another person. Our statutes and law [are] that a person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct. Intentional conduct is purposeful conduct, rather than conduct that is accidental or inadvertent." (Emphasis omitted; internal quotation marks omitted.) Id., 683–84.

This court concluded, "[t]he order in which the instruction was read likely misled the jury to believe that to intend to cause the death of another person means either to intend to cause the death of that person or to intend to engage in conduct that causes the death of that person. Similarly, when the court referred to the improper instruction as it charged the jury on attempt to commit murder and assault in the first degree with a firearm, the jury was also likely misled in the same manner." Id., 684.

Although the order of the improper intent instruction in *DeBarros* is similar to the present case, this court's determination in *DeBarros* is otherwise distinguishable. First, the trial court in *DeBarros* repeated the erroneous instruction when it instructed the jury on assault in the first degree and attempted murder. See id., 681–82 n.14 and 684. In the present case, the trial court repeatedly instructed the jury that it must find that the petitioner had the requisite specific intent, and the court's references to its prior instructions were to the elements of assault in the first degree, which included the required specific intent. Second, in *DeBarros* the trial court gave the erroneous instruction ten times, and this court determined that those improper instructions were too numerous to be rectified by the court's proper instructions. Id., 683. In the present case, the court gave the erroneous instruction once and only once referred to it, whereas it gave or referenced proper specific intent instructions on more than twenty occasions. Accordingly, the habeas court properly denied the erroneous jury instruction claim set forth in count fourteen of the petition because the petitioner failed to demonstrate that he was prejudiced by any alleged deficient performance of his trial counsel or habeas counsel.

### III

The petitioner also claims that the habeas court improperly found that appellate counsel's decision to forgo a claim of prosecutorial impropriety on direct appeal was a reasonable strategic decision. The petitioner argues that the prosecutor's arguments in summation misrepresented the evidence presented at trial. He asserts that Turner testified that detectives pressured him to identify the petitioner as the driver of the car at the shooting scene. Consequently, the petitioner maintains that the prosecutor mischaracterized the facts in evidence when he argued that there was no evidence that the police pressured Turner into identifying the petitioner. We disagree with the petitioner's characterization of both Turner's testimony and the prosecutor's argument.

The following additional facts and procedural history are relevant to the resolution of this claim. The habeas court found that "[i]n late [1996],[10] the petitioner was arrested and charged with a gang related drive-by shoot-

ing that occurred on November 24, [1996].[11] Immediately after the shooting, while he was in the hospital, one of the victims, a member of the rival gang that was in the other vehicle, Kendall Turner, identified the petitioner as the shooter and was a key state's witness at the criminal trial. . . . Due to [a] delay, the trial was not held in this case until December, 2002, six years after the shooting and the petitioner's arrest. Sometime prior to trial, Turner recanted his identification of the petitioner. The state then used his original statement at trial, under the *Whelan* doctrine."[12] (Footnotes added.)

The petitioner presented evidence to the habeas court that at his criminal trial, Turner testified as follows. After being shot, he and Kelley exited the car and proceeded on foot to the home of Turner's aunt. Law enforcement officers arrived at his aunt's home shortly thereafter, and he informed an officer who questioned him that there were three or four African-American males in a Sentra from which the shots were fired, but he did not know any of them and was unable to describe them further. An ambulance was summoned and, as he was being placed into the ambulance, Turner spoke with another law enforcement officer, Detective William Piascyk.

Turner's testimony on cross-examination by trial counsel continued as follows:

"Q. And you told Detective Piascyk that the shots that came from the [Sentra], four-door hardtop, which you believe was dark green; isn't that right?

"A. It's probably—

"Q. But you were not able to tell Detective Piascyk, and, in fact, you did not give Detective Piascyk the names of anybody who had been involved in shooting you; isn't that right?

"A. Yes.

"Q. And that's because you didn't know; isn't that right?

"A. Yes.

"Q. But later at the hospital, these two detectives came and showed you these pictures and, at that point, you gave this witness statement; isn't that right, the taped statement? Isn't that right?

"A. Yes.

"Q. And as we all know, at that time you claimed that [the petitioner] was the driver of that car?

"A. Yes.

"Q. But that wasn't the truth, was it?

"A. No.

"Q. So, why did you say that about him?

"A. Pressuring me.

"Q. Pressure?

"A. Yeah.

"Q. From whom?

"A. All of them, detectives.

"Q. And was that Detective Trocchio?

"A. I don't even know their name.

"Q. You don't know his name?

"A. I don't know none of them.

"Q. Because, in fact, you had known [the petitioner] most of your life; isn't that right?

"A. Yes.

"Q. You knew him when you were kids?

"A. Yes.

"Q. You recognized him any time you saw him. And in fact, if [the petitioner] was driving the car, you would have—and you'd seen him, you would have known who it was; isn't that right?

"A. Yes."

During the rebuttal portion of his closing argument, the prosecutor stated: "You heard about why don't you speculate that the police are somehow *feeding information* to . . . Turner. Is there any shred of evidence, any shred of evidence in this case that anything like that ever happened? No, there is not. And if there isn't any evidence on it, you can't conclude that it had been. Even . . . Turner, who you will have [to] agree was pretty much willing to agree with anything [trial counsel] said yesterday, not only wasn't asked but certainly never said, oh, yeah, I named [the petitioner] *because the police told me to*. Not once. There is no evidence of that, and you can't conclude that it exists when there is no evidence. . . .

"And the evidence, as I would say, does not include any suggestions, any suggestions even from the cooperative Mr. Turner, that the police *told him to say anything*. His response to, why did you say that, when he claimed to be making up the name was, I can't tell you that.

\*\*\*

"And all of the suggestions that somebody planted this material in his head are contradicted by the evidence that's admitted in this case. What was the reason that Mr. Turner would falsely identify [the petitioner]? There isn't any. There is nothing in this case to suggest that he would falsely identify someone."[13] (Emphasis added.)

Trial counsel did not object to the prosecutor's state-

ments at trial. When asked about claims that she could have brought but did not raise on appeal, appellate counsel testified at the habeas trial in the present case that she thought that the prosecutor's closing argument was improper but that she thought it was a weak claim of prosecutorial impropriety.

The habeas court's denial of the petitioner's claim that appellate counsel was deficient in failing to raise a claim of prosecutorial impropriety rested on three grounds. First, the court found that there was no evidence that if appellate counsel had raised the prosecutorial impropriety claim she would have or could have met the standards required under *Golding* for review of such an unpreserved claim.[14] Second, the court determined that appellate counsel made a reasonable strategic decision to forgo the claim because she considered it weak. Third, the court determined that the petitioner had failed to establish that there was a reasonable probability that he would have prevailed on appeal.

"On appeal, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound [appellate] strategy." (Internal quotation marks omitted.) *Otto* v. *Commissioner of Correction*, 161 Conn. App. 210, 226, 136 A.3d 14 (2015), cert. denied, 321 Conn. 904, 138 A.3d 281 (2016); see also *Alterisi* v. *Commissioner of Correction*, 145 Conn. App. 218, 227, 77 A.3d 748 (tactical decision of appellate counsel not to raise particular claim ordinarily matter of appellate tactics and not evidence of incompetency), cert. denied, 310 Conn. 933, 78 A.3d 859 (2013). "Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at a lack of confidence in any one [issue] . . . . [M]ultiplying assignments of error will dilute and weaken a good case and will not save a bad one." (Internal quotation marks omitted.) *Synakorn* v. *Commissioner of Correction*, 124 Conn. App. 768, 775, 6 A.3d 819 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1004 (2011).

"[T]he defendant's failure to object at trial to each of the occurrences that he now raises as instances of prosecutorial impropriety, though relevant to our inquiry, is not fatal to review of his claims. . . . This does not mean, however, that the absence of an objection at trial does not play a significant role in the determination of whether the challenged statements were, in fact, improper. . . . To the contrary, we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was [improper] in light of the record of the case at the time." (Internal quotation marks omit-

ted.) *State* v. *Barry A.*, 145 Conn. App. 582, 597, 76 A.3d 211, cert. denied, 310 Conn. 936, 79 A.3d 889 (2013).

In the present case, we disagree with the petitioner's characterization of both Turner's testimony and the prosecutor's statements to the jury. Although Turner's testimony may have indicated that law enforcement officers pressured him to make a statement, it did not indicate that they were feeding him information. His testimony suggested that law enforcement officers were trying to persuade him to give a statement, but Turner did not testify that the police told him *what* to say. His testimony indicated that law enforcement officers presented him with a photographic array and that he identified the petitioner from it. It was, therefore, a reasonable characterization of the evidence, his testimony included, that he was not told to identify the petitioner or that he was fed information.

The evidence, thus, supports the habeas court's conclusion that appellate counsel made a reasonable strategic decision in choosing to forgo a meritless or weak claim of prosecutorial impropriety. Appellate counsel's performance, therefore, was not deficient for having failed to bring such a claim. Accordingly, a claim of ineffective assistance of habeas counsel for failing to claim that appellate counsel was ineffective on this ground cannot stand.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The habeas court granted the petitioner certification to appeal. See General Statutes § 52-470.

[2] See *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1986).

[3] As stated exactly by the petitioner, the second issue he raises on appeal asks "whether the habeas court erred when it failed to consider the trial court's jury instruction defining 'acting intentionally,' which included the definition for specific and general intent . . . ." On the basis of our reading of the petitioner's arguments in support of this claim, we understand his claim to be that the habeas court improperly denied his claim of ineffective assistance of habeas counsel for failing to raise a claim that his trial counsel was ineffective for failing to raise a claim of instructional error when the habeas court failed to adequately address the legal ramifications of the trial court's reading of the statutory definition of "acting intentionally."

[4] The habeas court determined that the petitioner had abandoned an additional claim of ineffective assistance of counsel for the alleged failure to advise the petitioner of his right to apply for sentence review sufficiently. *Salters* v. *Commissioner of Correction*, supra, 141 Conn. App. 84 n.1.

[5] See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

[6] Prosecutorial impropriety claims are not subject to analysis pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). *State* v. *Fauci*, 282 Conn. 23, 34, 917 A.2d 978 (2007).

[7] Such a standard would be more advantageous to the petitioner. "In a classic *Brady* case, involving the state's inadvertent failure to disclose favorable evidence, the evidence will be deemed material only if there would be a reasonable probability of a different result if the evidence had been disclosed. [The] touchstone of materiality [under *United States* v. *Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)] is a reasonable probability of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial,

understood as a trial resulting in a verdict worthy of confidence. A reasonable probability of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial. . . .

"When, however, a prosecutor obtains a conviction with evidence that he or she knows or should know to be false, the materiality standard is significantly more favorable to the defendant. [A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. . . . This standard . . . applies whether the state solicited the false testimony or allowed it to go uncorrected . . . and is not substantively different from the test that permits the state to avoid having a conviction set aside, notwithstanding a violation of constitutional magnitude, upon a showing that the violation was harmless beyond a reasonable doubt. . . . This strict standard of materiality is appropriate in such cases not just because they involve prosecutorial misconduct, but more importantly because they involve a corruption of the truth-seeking function of the trial process. . . . In light of this corrupting effect, and because the state's use of false testimony is fundamentally unfair, prejudice sufficient to satisfy the materiality standard is readily shown . . . such that reversal is virtually automatic . . . unless the state's case is so overwhelming that there is no reasonable likelihood that the false testimony could have affected the judgment of the jury." (Citations omitted; internal quotation marks omitted.) *Adams* v. *Commissioner of Correction*, 309 Conn. 359, 370–73, 71 A.3d 512 (2013).

[8] As to his claim on appeal that the habeas court erred in failing to apply the "findings" of this court in *Salters* v. *Commissioner of Correction*, supra, 89 Conn. App. 221, to his claim that habeas counsel was ineffective for having failed to allege that appellate counsel was ineffective for failing to bring a *Brady* claim, the petitioner acknowledges that that claim is dependent on a favorable determination by this court on his materiality claim. Because we conclude that he has not provided an adequate record to review his materiality claim and the habeas court otherwise concluded that his *Brady* claims were immaterial, we do not address his third claim on appeal.

[9] Compare the trial court's instruction to General Statutes § 53a-3, which provides in relevant part: "Except where different meanings are expressly specified, the following terms have the following meanings when used in this title . . . (11) A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

[10] The habeas court's memorandum of decision states that the petitioner was arrested and that the crime occurred in 2006, but this is a typographical error, as all of the evidence, and the habeas court's other recitations of facts, indicate that these events occurred in 1996.

[11] See footnote 10 of this opinion.

[12] See *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

[13] Even if we assume that the prosecutor's argument was an incorrect characterization of Turner's testimony, because Turner testified that he was "pressured," the petitioner has not demonstrated that the statement, considered in the full context of a closing argument, is of the type or level of prosecutorial impropriety that has been determined to deprive a defendant of his due process right to a fair trial. See *State* v. *Orellana*, 89 Conn. App. 71, 106, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005); see also *State* v. *Maguire*, 310 Conn. 535, 552, 78 A.3d 828 (2013) ("[w]hen a defendant raises on appeal a claim that improper remarks by the prosecutor deprived [him] of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper" [internal quotation marks omitted]). Additionally, the prosecutor made this argument in response to suggestions by trial counsel that the police told Turner to identify the petitioner. "[T]here is ample room, in the heat of argument, for the prosecutor to challenge vigorously the arguments made by defense counsel." (Internal quotation marks omitted.) *State* v. *Maner*, 147 Conn. App. 761, 789, 83 A.3d 1182, cert. denied, 311 Conn. 935, 88 A.3d 550 (2014).

[14] Prosecutorial impropriety claims are not subject to analysis pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). *State* v. *Fauci*, 282 Conn. 23, 34, 917 A.2d 978 (2007). Although the habeas court based its conclusion in part on this determination, this does not affect our conclusion that the habeas court properly denied this claim for the reasons we discuss.